1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rhonda Sesco, ) | CIV-16-03391-PHX-MHB |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Commissioner of Social Security Administration, ) | |
| Defendant. ) | |

Plaintiff Rhonda Sesco seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her application for period of disability and disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence, the Commissioner's decision will be affirmed.

**I. BACKGROUND**

On December 12, 2012, Plaintiff applied for a period of disability and disability insurance benefits, alleging disability beginning May 1, 2004. (Transcript of Administrative Record ("Tr.") at 22.) Plaintiff's application was denied initially on June 26, 2013, and upon reconsideration it was denied again on November 19, 2013. (Tr. at 22.) Thereafter, Plaintiff filed a written request for a hearing. (Tr. at 22, 85.) On March 26, 2015, Plaintiff appeared with her attorney and testified at a hearing before the ALJ. (Tr. at 37.) An impartial vocational expert also testified. (Tr. at 46.) At the hearing, Plaintiff amended the alleged disability onset date to March 18, 2011. (Tr. at 40.) On May 13, 2015, the ALJ issued a

decision finding that Plaintiff was not disabled within the meaning of the Social Security Act from March 18, 2011, through the date of the ALJ's decision. (Tr. at 30.) On August 2, 2016, the Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the final decision of the Commissioner. (Tr. at 1-6.)

## II. LEGAL STANDARD

The district court reviews only those issues raised by the party challenging the ALJ's decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence means more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion. Id. In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." Id. As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989). If the "evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

## III. THE ALJ'S FIVE-STEP EVALUATION PROCESS

The Social Security Administration has a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). The steps are sequentially followed by the ALJ. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If it

cannot be determined that the claimant is or is not disabled at a step in evaluation process, then the evaluation will go on to the next step. 20 C.F.R. § 404.1520(a)(4). The ALJ considers whether a claimant is disabled by determining: (1) whether the claimant is "doing substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual functional capacity" ("RFC"), the claimant can still do his or her "past relevant work"; and (5) whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step one, the ALJ found that the Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015, and that she has not engaged in substantial gainful activity since March 18, 2011, which is the amended alleged disability onset date. (Tr. at 24.) At step two, the ALJ found that Plaintiff has the following severe impairments: status post right shoulder surgery, inflammatory arthritis, degenerative disc disease, status post right knee surgery, and obesity. (Tr. at 24.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (Tr. at 25.) At step four, the ALJ found that Plaintiff has the RFC to perform:

> medium work as defined in 20 CFR 404.1567(c) except that she while she can lift or carry fifty pounds occasionally and twenty-five pounds frequently from floor to chest, she can only occasionally lift or carry fifteen pounds overhead. The claimant can stand, walk, or sit for six hours each, with regular breaks, in an eight-hour workday. The claimant can only occasionally kneel or crawl, but can frequently stoop or crouch. Lastly, the claimant can only occasionally reach overhead with her bilateral upper extremities.

1  (Tr. at 26.) At step five, the ALJ found that the Plaintiff is capable of performing her past
2  relevant work as a home attendant. (Tr. at 29.) Therefore, the ALJ concluded that Plaintiff
3  has not been under a disability from March 19, 2011, through the date of her decision. (Tr.
4  at 30.)

## IV. DISCUSSION

Plaintiff argues that the ALJ improperly weighed the medical opinions of Plaintiff's consultative examiner Quirino Valeros, M.D. ("Dr. Valeros") and treating Physician's Assistant Alaina Bates, P.A. ("P.A. Bates"). The Court will address the ALJ's treatment of the objective medical evidence below.

The Ninth Circuit distinguishes between opinions of treating physicians, examining physicians, and non-examining physicians. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. See Andrews, 53 F.3d at 1040-41. Only "licensed physicians and certain other qualified specialists are considered acceptable medical sources." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing 20 C.F.R. § 404.1513(a)) (quotations omitted). For claims filed before March 27, 2017, physician assistants are defined as "other sources." 20 C.F.R. § 404.1513(d)(1) (amended 2017). For claims filed before March 27, 2017, physician assistants are not entitled to the same deference as acceptable medical sources. See 20 C.F.R. § 404.1527(f). The ALJ may discount testimony from these other sources if the ALJ gives germane reasons as to each source. Molina, 674 F.3d at 1111 (citations omitted). Under this standard, the ALJ may discount a physician assistant's opinion if it is conclusory, such as when the opinion is expressed in a standardized check-the-box form that fails to provide supporting reasons or clinical findings, or when the opinion is inconsistent with other objective medical evidence in the record. Kline v. Colvin, 140 F.Supp.3d 912, 919 (D. Ariz. 2015).

1  If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830 (citing Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, 81 F.3d at 830-31 (citing Andrews, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986). But the ALJ "must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." Embrey, 849 F.2d at 421-22.

Historically, the courts have recognized the following as specific, legitimate reasons for disregarding a treating or examining physician's opinion: conflicting medical evidence; the absence of regular medical treatment during the alleged period of disability; the lack of medical support for doctors' reports based substantially on a claimant's subjective complaint of pain; and medical opinions that are brief, conclusory, and inadequately supported by medical evidence. See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten v. Sec'y of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

The ALJ did not err in assigning little weight to the opinions of Dr. Valeros and P.A. Bates, and assigning great weight to State agency medical consultant J. Wright, M.D.'s opinion. The ALJ provided specific and legitimate reasons for assigning little weight to Dr. Valeros' opinion and a germane reason for discounting P.A. Bates' opinion.

Examining physician Dr. Valeros performed a medical evaluation in June 2013. (Tr. at 202.) Dr. Valeros opined that Plaintiff "could lift or carry only ten pounds; could stand or walk fire hours in an eight-hour workday; could sit six to eight hours; could frequently climb

ramps or stairs, stoop, kneel, handle, finger, or feel; could occasionally reach, crawl, or crouch; and could never climb ladders, ropes, or scaffolds." (Tr. at 29, 202-06.) The ALJ afforded little weight to this opinion finding that although Dr. Valeros had the opportunity to examine Plaintiff, it was not a "treating relationship." Significantly, the ALJ determined that Dr. Valeros' conclusions were not supported by his own treatment notes as demonstrated by his finding that Plaintiff had only "mild pain in the right shoulder and left knee," she drives, goes to the store and doctor appointments, and can walk a block and do housework. Dr. Valeros' notes additionally indicate that Plaintiff is alert, oriented, and not in acute stress. She is ambulatory with a normal gait; normal flexion and extension of her cervical spine; normal rotation in abduction and adduction of her hip joints; normal flexion and extension of her knee; and normal function of her ankle, shoulder, elbow, wrist, and finger joints. She measured "good strength of the upper and lower extremities, 5 out of 5," and her sensory exam was "unremarkable." Under the "recommendations" section of his report, Dr. Valeros opined that "I find the claimant with functional limitations ... she may be able to do work that does not require excessive walking or heavy lifting." All of these findings set forth in Dr. Valeros' treatment notes conflicted with his check-the-box form appearing after his examination. And thus, the ALJ properly found that Dr. Valeros' conclusion was not supported by his own treatment notes.

A discrepancy between a physician's notes and his opinions is a clear and convincing reason (a more demanding standard than specific and legitimate) for not relying on that physician's opinion. Bayliss, 427 F.3d at 1216. Thus, the ALJ did not err in affording Dr. Valeros' opinion little weight because of the discrepancy between his notes and conclusion.

As to P.A. Bates, the record contains a fill-in questionnaire completed by P.A. Bates indicating that Plaintiff would "need to recline throughout the workday; could sit for only two hours in an eight-hour workday; could stand or walk only three hours; would need to shift positions; could only occasionally lift or carry ten pounds or less; had manipulative restrictions; and would be absent for more than four days a month." (Tr. at 29, 237-38.)

In rejecting this assessment, the ALJ noted that although P.A. Bates was a treating provider, physician assistants are not medically accepted sources. (Tr. at 29.) Further, the ALJ emphasized the fact that it was unclear what observations and objective findings P.A. Bates based her check-the-box opinion on, and, as such, the ALJ afforded her opinion little weight.

At the time this claim was filed, P.A. Bates did not qualify as a medically acceptable treating source because she was a physician assistant. The ALJ, thus, gave a germane reason for discounting P.A. Bates' opinion in finding that her check-the-box questionnaire did not appear to be based on sufficient objective medical findings and observation. Accordingly, the ALJ did not err in discounting P.A. Bates' opinion.

The ALJ gave great weight to Dr. Wright who opined that Plaintiff was limited to medium exertion, except that she could only occasionally lift fifteen pounds overhead, and that Plaintiff had postural and manipulative limitations. (Tr. at 28.) The ALJ noted that although Dr. Wright was a non-examining opinion, his opinion was much more consistent with the medical evidence of record. The ALJ noted that the record demonstrated that Plaintiff had more than minimal functional limitations, but failed to reflect that Plaintiff should be restricted more than outlined by Dr. Wright. (Tr. at 29.) The Court's review of the record supports this conclusion.

As of August 2012, in terms of shoulder pain, the Plaintiff had been doing well, according to her surgeon Mark Greenfield, D.O., and was considered to be on full work status one year after her left shoulder surgery. (Tr. at 184.) The objective evidence demonstrated that Plaintiff's shoulder impairments were largely resolved following her surgery.

As to Plaintiff's arthritis and degenerative disc disease, although imaging performed before the amended onset date revealed mild disc bulging and scoliosis, there was no spondylolisthesis, and records from 2011 demonstrated that Plaintiff was not experiencing swelling in her lumbar spine and had normal range of motion. The ALJ recognized that

imaging in 2014 and 2015 revealed mild osteoarthritis, lower lumbar spine degenerative facet changes, degenerative disc disease, and spondylosis. Yet, she also found that the objective medical evidence demonstrated that these issues were described as mild to moderate with mostly normal objective findings. The ALJ noted that recent imaging showed that Plaintiff's condition had deteriorated to a small extent, but that this deterioration was not indicated over the entirety of the relevant period.

As to Claimant's asserted knee limitations, the record reflected that on September 30, 2008, the claimant underwent surgery to repair a tear, and alleviate a diagnosis of chondromalacia and a chondral defect of the medial femoral condyle. The ALJ noted that the medical evidence is largely silent regarding the results of this surgery until Dr. Valeros' 2013 consultative examination, during which he noted that Plaintiff had only mild pain in her knees. Although X-rays did show mild to moderate degenerative changes, by November 2014, her pain was better and cortisone shots appeared to help. The ALJ noted that Plaintiff was compliant with behavior modification and exercise requests concerning her obesity, and was able to perform a level of exertional activities consistent with efforts to reduce weight. The ALJ found these efforts along with a positive response to treatment demonstrated that Plaintiff's knee does not restrict her beyond medium work with the postural limitations.

Lastly, regarding Claimant's obesity, the ALJ considered any functional limitations arising therefrom, and found that "[b]ased on the claimant's height and weight measurements and taking into account her complaints and limitations, the undersigned finds that the claimant's weight exacerbates her physical impairments to the extent that she is limited to medium work."

Considering all of the above, the ALJ's assignment of greater weight to the opinion of Dr. Wright, who opined that Claimant was limited to medium exertion and had postural and manipulative limitations, as his assessment was reasonable given that Dr. Wright had reviewed the medical records and his opinion was consistent with the greater objective medical evidence of record. The Court finds no error.

## CONCLUSION

Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for disability insurance benefits in this case. Consequently, the ALJ's decision will be affirmed.

Based upon the foregoing discussion,

**IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social Security be affirmed;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

DATED this 14th day of March, 2018.

Michelle H. Burns
United States Magistrate Judge